165 So.2d 213 (1964)
Vesta HEDGES, Appellant,
v.
STATE of Florida, Appellee.
No. 3110.
District Court of Appeal of Florida. Second District.
May 22, 1964.
Rehearing Denied June 25, 1964.
Mark R. Hawes, St. Petersburg, and Richard B. Keating of Smith & Keating, Orlando, for appellant.
James W. Kynes, Atty. Gen., and James G. Mahorner, Asst. Atty. Gen., Tallahassee, for appellee.
*214 FUSSELL, CARROLL W., Associate Judge.
Appellant, a divorced legal secretary, 44 years of age, was indicted for murder in the first degree and charged with fatally shooting the deceased, a married man, 36 years of age, who was a garage mechanic. The case required 14 days for trial and the transcript of testimony consists of 10 volumes. Appellant's brief presents six questions upon which she seeks reversal of her conviction of manslaughter.
Appellant and deceased were each married at the time they first met, some seven years prior to the death of the deceased, during most of which time they maintained an illicit relationship. Numerous disagreements and separations occurred between the appellant and deceased over this seven-year period. Appellant's husband was a salesman and his employment required him to be away a good portion of the time, and upon learning of her infidelity divorce proceedings were instituted which resulted in a divorce and in which, by agreement, their home in Orlando, where the homicide occurred, was awarded to appellant and the custody of their two sons was awarded to her husband, who had gone back to Illinois where they previously resided. The first child of the deceased was a few months old at the time he first met the appellant. He continued to live with his wife during this entire time, except for one thirty-day period, and two other children were born during this seven-year period.
The wife of the deceased testified that he had decided to give up and leave the appellant and that he informed her that he was staying with the appellant as much as he had because appellant had compromising pictures which she threatened to exhibit to his elderly father and mother and to his children if he left her. She further testified that shortly prior to his death the deceased decided definitely to leave appellant, and on July 30, 1961, appellant `phoned her and requested that they meet to discuss the matter; that at this meeting appellant told her that she loved the deceased; that she had given seven years of her life to him; that she had given up her husband and her two sons on account of him, and that she would kill him if he attempted to leave her; that she would trick him into coming to her place and would then shoot him and claim self-defense; that the attorneys for whom she worked were excellent lawyers and would free her from any criminal charge.
The evidence shows that the deceased went to the home of the appellant on the night of August 8, and that about 1:30 a.m. on August 9 he was killed by a shot from a 22-caliber revolver owned by the appellant. Appellant was shot on this same occasion by this same revolver, the bullet entering her breast, piercing her body and coming out of her back on to the floor where it was found. There were no witnesses other than the appellant and the deceased. The deceased was found lying on his back with his right hand resting on his body and the pistol held lightly under his hand.
It is the testimony of the appellant that deceased became angry with her when she would not promise that she would not have dates with other men while he continued to live with his wife, and after she thought he had left her home he came back into the room where she was with a pistol, which remained in his hands at all times, and told her he was going to kill her. Appellant testifies that she grabbed at the pistol and a struggle ensued, during which she was shot through the body, and while wrestling with the deceased the pistol was again discharged into his body, causing him to die almost immediately.
An expert witness testified on behalf of the State that he examined the deceased's shirt, and from tests made, and his experience and special study in this field, the muzzle of the pistol could not have been closer than two and a half feet from deceased's shirt at the time of the explosion.
The evidence indicates that the pistol was a single-action 22-caliber revolver and *215 that it was necessary to cock the pistol by pulling back the hammer each time before firing it. It was the contention of the State that the deceased could not have shot himself by holding the pistol with its muzzle thirty inches from his body at the time of the shooting.
One of the questions interposed by appellant is the sufficiency of the evidence to sustain appellant's conviction of manslaughter. It is our opinion that there is sufficient evidence in this case, if believed by the jury, to sustain the guilty verdict for manslaughter found by the jury.
Appellant objects and contends that the decisions of the State Supreme Court, citing Mayo v. State, Fla., 71 So.2d 899; Holton v. State, 87 Fla. 65, 99 So. 244; Kelly v. State, 99 Fla. 387, 126 So. 366; Metrie v. State, 98 Fla. 1228, 125 So. 352, and Jenkins v. State, 120 Fla. 26, 161 So. 840, hold that where there are no eye witnesses other than the defendant and the deceased, so that the proof of guilt must be circumstantial, and where the defendant's testimony showing innocence is consistent with the circumstantial evidence, that then the defendant's testimony must be accepted and the defendant acquitted.
In this case, however, the defendant's testimony that the deceased shot himself is not consistent with the physical facts, if believed by the jury, by reason of the expert testimony that the muzzle of the pistol was thirty inches or more from the body of the deceased at the time the pistol was fired. The jury is not required to believe the testimony of the defendant if they find other facts to exist which would make the defendant's version impossible.
Another question presented is whether the remarks of the State's Attorney in his argument to the jury constituted an improper and prejudicial reference to the failure of the defendant to testify at a prior preliminary hearing or habeas corpus proceeding, contrary to the provisions of Florida Statute § 918.09, F.S.A. The three statements made by the State's Attorney, and about which the defendant now complains, are as follows:
"Let me remind you of one little threat that was contained in there which I think is significant. Before Mrs. Hedges ever got to the stand, and told us what happened in that room, which is the first time we have heard it, Mrs. Keeling testified that in order to carry out her threat she was going to get Bob over there on some pretext or other and then shoot him and claim self defense. When was the next time we heard that? Mrs. Keeling didn't hear what Mrs. Hedges was going to say. Lo and behold, Mrs. Hedges, I think, is going to claim self defense. * * *" (T.T. Vol. IX-1734) (Emphasis supplied by defendant).
"* * * the State was very limited as to the investigation it could make because of the silence of the accused." (T.T. Vol. X-1824) (Emphasis supplied by defendant).
"* * * What did she do when she went back into the bedroom and started dialing the phone? Who did she call? Who did she tell her story to? She didn't tell it to the Sheriff's office; she didn't tell it to the ambulance driver; she didn't call the police; she didn't call her doctor  * * *" (T.T. Vol. IX-1731). (Emphasis supplied by defendant.) (Above from page 4 of Brief of Appellant)
It is the contention of defendant that the above statements referred to the failure of the defendant to testify at a habeas corpus proceeding for bail held before Judge Barker on November 13, 1961. The defendant cites six places in the transcript wherein it is said that the habeas corpus was referred to. The reference referred to is substantially the same in all six places and consists of a question asked by the attorney for the defendant of a witness, as follows:
"Do you remember testifying before Judge Barker on November 13, 1961?"
*216 There is no reference to the type of the hearing or the purpose of the hearing, and, in fact, it might have been a hearing on a civil case or on some other criminal case. The defendant testified at her trial and there is no indication she was in anyway prejudiced by reason of the statements of the State's Attorney.
Defendant relies principally upon the case of Simmons v. State, 139 Fla. 645, 190 So. 756. In this case the State's Attorney asked the defendant at the time of trial:
"Q. Did you testify at the preliminary hearing?
"A. No sir.
"Q. Did you testify at the habeas corpus?
"A. No sir."
Later in his argument to the jury the State's Attorney said "up until that time the defendant had never opened his mouth." The court held this to be a violation of the Florida Statute, since the State's Attorney had called attention of the jury to the failure of the defendant to testify at the preliminary hearing or at the habeas corpus hearing. The record in this case is wholly silent as to whether there was a habeas corpus hearing held in this case or as to whether any preliminary hearing was held in this case or not.
Appellant contends that the lower court committed error by its refusal to give her requested charge No. 17 as amended, which reads as follows:
"A person's dwelling house is a castle of defense for himself or herself and family and one assaulted in his or her own home is not obliged to retreat, but may stand his or her ground and use such force as may appear to him or her as a cautious, prudent man or woman to be necessary to save his or her life or to save himself or herself from great bodily harm, if such a person be free from fault in bringing about such an assault." (Original record p. 6-24; T.T. Vol. IX-1711-1713.)
The State has offered no evidence, nor has the State's Attorney made any contention that the appellant killed the deceased in self defense. Further, there is no testimony on behalf of the appellant herself that she shot the deceased, but rather that both she and the deceased were shot in the struggle for the gun which remained in the hands of the deceased and was still in his hands while he lay dead on the floor.
Since there was no factual issue of self defense before the jury, the lower court was not in error to refuse to give the instruction requested.
It is also contended that the lower court erred, upon the jury's request for reinstruction as to the different degrees of homicide, by refusing to grant appellant's request to include a definition of justifiable and excusable homicide. After the jury had deliberated some six hours and prior to their retirement for the night, and upon receiving instructions as to recess from the court, one of the jurors said:
"Is there a possibility of an explanation of all these different degrees that we went through here prior to our departure?"
The court indicated that it would answer this question the following morning. Upon return of the jury and before commencing deliberations the following took place:
"THE COURT: Is there any request of the court this morning by the Jury?
"A JUROR: Yes, sir. We would like for you to go over the different degrees that were stated the other day. There is some confusion as to the different charges there.
"THE COURT: As to the degree itself?
"A JUROR: Yes.

*217 "THE COURT: Are you interested in any other charge other than that?
"A JUROR: Offhand, at the present time, no, sir.
"THE COURT: All right, then. You want just the degree?
"A JUROR: Yes, sir."
The court then repeated its charges as to murder in the first degree; murder in the second degree; murder in the third degree, and manslaughter, with the penalties for each offense, after which occurred the following:
"Appellant's attorney: If your Honor please, I respectfully request that you charge the jury on justifiable and excusable homicide, because I think that is a portion of the way they would arrive at the degree of homicide.
"THE COURT: That is not the understanding of the court as to the request the juror made to the court. Your motion is therefore denied."
The court then permitted the jury to retire to further consider their verdict.
It is our opinion that the lower court complied with the request of the juror and further asked them if they wanted anything further than the specific degrees of homicide. The jury also heard the objection of appellant's attorney and nowhere does there appear that the jury desired any further or other instruction than that given. The instruction on justifiable and excusable homicide were each covered by the court in its original charges to the jury.
Appellant charges reversible error to the lower court in permitting an expert witness to testify, giving his opinion from examination of the deceased's shirt as to the distance the muzzle of the pistol was from the shirt at the time of its discharge. Many questions were asked of the expert witness as to the basis for this opinion. It was admitted that the shirt was taken off of the deceased's person and mailed to the witness in Tallahassee, where it was examined, and that it had, to some extent, been disturbed prior to the examination. The witness admitted on cross examination that he could have given a more definite estimate had he examined the shirt undisturbed, but stated that he was accustomed to examining disturbed garments and that in this case, in his opinion, his examination revealed to him a condition which, in his opinion, justified a finding that the muzzle of the pistol was at least two and a half feet from the shirt at the time of its discharge. The pattern of powder was not the same as it was prior to the removal of the shirt from the body of the deceased, but, according to the testimony of the expert witness, he considered the fact that it had been disturbed and considered powder burns and other matters which enabled him to arrive at an opinion as to the distance. The weight or strength of this testimony could be argued to the jury, but the expert stated definitely that he could and did have a definite opinion as to the minimum distance the muzzle of the pistol was from the shirt at the time of the discharge. We do not feel that he was incompetent to express his opinion.
Finally, appellant claims error on the part of the lower court in permitting the expended pistol bullets, the pistol, deceased's shirt, photographs taken in defendant's home, and other exhibits taken from the home of the defendant to be introduced in evidence over the objection of defendant and that they were obtained as the result of an illegal search of the home of the defendant without a search warrant, without the consent of the defendant and not as incident to or after a lawful arrest.
Appellant cites Section 22 of the Declaration of Rights of the Florida Constitution, F.S.A., as follows:
"SECTION 22. Searches and seizures.  The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches, shall not be violated and *218 no warrants issued, but upon probable cause, supported by oath or affirmation, particularly describing the place or places to be searched and the person or persons, and thing or things to be seized."
Appellant then cites the case of Haile v. Gardner, 82 Fla. 355, 91 So. 376, from which she quotes as follows:
"This organic provision in purpose and effect forbids the Legislature to enact laws that authorize unreasonable searches or seizures as well as forbids unreasonable searches and seizures by officers purporting to act under laws that authorize reasonable seizures and searches. What is a reasonable law authorizing a search or seizure is ultimately for judicial determination upon due consideration of the nature and extent of the evil designed to be remedied and the provisions of the law. What is a reasonable or valid search or seizure is to be determined by the courts upon due consideration of circumstances and manner in which the search or seizure is made by the officer. No search or seizure is permissible under the law without a proper warrant dully issued, except as a reasonable search and seizure may be allowed by law as an incident to a lawful arrest. Where an arrest without a warrant is allowed by law, as for an offense being committed or threatened in the presence of an officer authorized by law to make arrests for such offense, a reasonable search and seizure that is properly incident to a lawful arrest may be made in a reasonable and proper manner by the officer making the lawful arrest; but the search and seizure should not be inappropriate to the reasonable requirements for making effective a lawful arrest." (Emphasis supplied by appellant).
Literally interpreting the underscored portion of the above, it is apparently the defendant's contention that no search and seizure of a private residence can be made except where a valid search warrant has been issued or as incident to a lawful arrest. Defendant in the brief, however, does indicate that an exception would be where consent of the defendant has been given. The full facts are not stated in the above opinion and it indicates only that the residence was broken into and searched in the night time and moonshine liquor discovered therein which was seized and was the basis for the criminal charge against the defendant. The court in this case held the search and seizure unreasonable since there was no valid search warrant and the search was not made as an incident to a lawful arrest.
A later case on this subject is Benefield v. State of Florida, Fla., 160 So.2d 706. In this case the private home was entered under circumstances where the court held that even if probable cause existed for the arrest of the person inside, that the Statute was violated by an unannounced intrusion contrary to the provisions of Florida Statute § 901.19(1), F.S.A. In this case the court said:
"As we interpret the common law authorities in relation to § 901.19(1), Florida Statutes, F.S.A., we conclude that even if probable cause exists for the arrest of a person, our statute is violated by an unannounced intrusion in the form of a breaking and entering any building, including a private home, except (1) where the person within already knows of the officer's authority and purpose; (2) where the officers are justified in the belief that the persons within are in imminent peril of bodily harm; (3) if the officer's peril would have been increased had he demanded entrance and stated the purpose, or (4) where those within made aware of the presence of someone outside are then engaged in activities which justify the officers in the belief that an escape or destruction of evidence is being attempted. Time and experience will no doubt suggest other *219 exceptions, but when the facts of this case are measured against the statutory criteria and its exceptions, it is clear that the unannounced entry of the officers in this case violated the statute and vitiated the arrest made pursuant to probable cause without warrant."
In the instant case the evidence showed that the defendant called her attorneys after the shooting occurred and that thereafter someone called the sheriff and the ambulance driver and informed them of the shooting and of the place where it occurred. The ambulance driver arrived first, and the officer, upon arriving, and before entering the building, observed through a window the body of the deceased lying on the floor in the kitchen. The officer entered the building and everything which was removed and later introduced in evidence was, at this time, plainly in view without the necessity of any disturbing search of the premises. The deceased's shirt was on his back, the pistol was under his hand on his body, the bloody foot prints shown in the photographs were clearly visible on the floor, one of the bullets was in the deceased's body and the other bullet was laying on the floor. Thus it would seem that the first exception above enumerated, to-wit: "except (1) where the person within already knows of the officer's authority and purpose," was truly the situation here.
It is significant to note that in this statement appears the further statement: "time and experience will no doubt suggest other exceptions."
Appellant has cited only the one case and she has cited no case where the facts are similar to those in this case. In the case cited by the appellant, Haile v. Gardner, supra, it is stated:
"What is a reasonable or valid search or seizure is to be determined by the courts upon due consideration of the circumstances and manner in which the search or seizure is made by the officer."
It is our opinion that the Judge of the lower court was correct in his decision that any search and seizure made in the above cause under the circumstances and in the manner as appears from the testimony in this case were reasonable and not unreasonable, and were not prohibited by the Florida or United States Constitution.
A careful examination of the entire record on appeal discloses no reversible error in the proceedings below.
Affirmed.
WHITE, Acting C.J., and KANNER (Ret.), J., concur.